**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

WILLIAM VALENCIA,

      Plaintiff,

v.                               Case No: 8:21-cv-1748-TPB-AAS

HAINES CITY, FLORIDA,

      Defendant.

_____ /

### <u>ORDER GRANTING DEFENDANT'S</u><br><u>MOTION FOR SUMMARY JUDGMENT</u>

This matter is before the Court on "Defendant Haines City, Florida's Motion for Final Summary Judgement and Incorporated Statement of Facts and Memorandum of Law," filed on September 9, 2022. (Doc. 21). Plaintiff filed a response in opposition on October 13, 2022. (Doc. 31). Defendant filed a reply on October 27, 2022. (Doc. 34). Based on the motion, response, reply, court file, and record, the Court finds as follows.

### <u>Background</u>

Plaintiff William Valencia began working as a firefighter for Defendant Haines City, Florida, in 2001. He rose through the ranks, and in 2018 became a Battalion Chief, reporting directly to the Deputy Fire Chief. One of the job duties of a Battalion Chief is "running calls," that is, going out to emergencies and commanding fire scenes. Plaintiff had been required to run calls at various times since becoming a Lieutenant in 2008. At other times, he had worked primarily on

logistics and administrative matters, although he was required to cover the shifts of the other Battalion Chiefs whose regular duties including running calls.

Plaintiff suffered from high blood pressure and anxiety.  In 2012, he experienced symptoms suggesting a heart attack and went to the emergency room. Ultimately, it was determined he did not suffer a heart attack, but medical providers advised him to try to reduce his job stress in various ways.  None advised him at that time that he should not run calls.

In 2018, Thomas Murphy became interim Fire Chief, and Plaintiff assisted him in running the department while Plaintiff was on light duty due to an arm injury.  Plaintiff asked Murphy to let him continue working in logistics and be excused from running calls.  Murphy did not require Plaintiff to run calls, although the evidence is conflicting as to whether Murphy did so as an accommodation for a disability or simply because Murphy did not think Plaintiff competent to handle the task.

In February 2019, Jeffrey Davidson became the new Fire Chief.  Plaintiff asked Davidson to excuse him from running calls.  Davidson did not agree, and he asked Plaintiff to provide medical documentation to support the request, which Plaintiff never did.  Plaintiff talked to a workers' compensation lawyer about going out on a pension based on his medical issues, and in June 2019 the lawyer sent a letter to Davidson inquiring about this possibility.  The letter from the lawyer upset

Davidson, who asked Plaintiff why he had consulted a lawyer and whether Plaintiff was suing him.

After that, Davidson counseled and then disciplined Plaintiff based on various performance issues. Plaintiff describes this as Davidson placing his performance under a "microscope." In November 2019, Davidson placed Plaintiff on a "performance improvement plan" or "PIP," which required Plaintiff to meet or show progress on certain goals and projects within 90 days. Following a meeting with Plaintiff in February 2020 to discuss Plaintiff's progress, Davidson submitted a recommendation that Plaintiff be terminated for failing to meet the PIP goals and other performance issues. On March 26, 2020, City Manager Deric Feacher conducted a pre-determination hearing attended by Plaintiff, Plaintiff's counsel, Human Resources Director Auburn Taylor, Chief Davidson, and Defendant's counsel. Feacher thereafter sustained Chief Davidson's recommendation, and Plaintiff was terminated on April 10, 2020.

On October 27, 2020, Plaintiff filed suit in state court asserting a claim for retaliation under the workers' compensation statute. Plaintiff filed an amended complaint in July 2021 that included federal claims, and Defendant removed the case to this Court. The operative complaint alleges counts for workers' compensation retaliation (Count I), disability discrimination in violation of the Florida Civil Rights Act ("FCRA") (Count II), disability discrimination in violation of the Americans with Disabilities Act ("ADA") (Count III), retaliation in violation of

the FCRA (Count IV), and retaliation in violation of the ADA (Count V).  Defendant

has moved for summary judgment on all counts.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  A properly supported motion for summary

judgment is not defeated by the existence of a factual dispute.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Only the existence of a genuine issue of

material fact will preclude summary judgment.  *Id*.

The moving party bears the initial burden of showing that there are no

genuine issues of material fact.  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256,

1260 (11th Cir. 2004).  When the moving party has discharged its burden, the

nonmoving party must then designate specific facts showing the existence of

genuine issues of material fact.  *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590,

593-94 (11th Cir. 1995).  If there is a conflict between the parties' allegations or

evidence, the nonmoving party's evidence is presumed to be true and all reasonable

inferences must be drawn in the nonmoving party's favor.  *Shotz v. City of*

*Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

## Analysis

### *The Legal Framework*

The parties agree that Plaintiff's retaliation and discrimination claims under Florida's workers' compensation law, the ADA, and the FCRA should be analyzed under the burden-shifting framework used in Title VII cases pursuant to *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, to avoid summary judgment, the plaintiff must offer evidence to present a prima facia case of discrimination or retaliation. The burden then shifts to the defendant to offer a non-discriminatory or non-retaliatory reason for its actions. If it does so, the burden shifts back to the plaintiff to demonstrate that the proffered reasons are pretextual. *See, e.g.*, *Batson v. Salvation Army*, 897 F.3d 1320, 1328 (11th Cir. 2018) (ADA retaliation); *Wood v. Calhoun Cty. Fla.*, 626 F. App'x 954, 956 (11th Cir. 2015) (workers' compensation retaliation); *Toliver v. City of Jacksonville*, No. 3:15-cv-1010-J-34JRK, 2017 WL 1196637, at *5 (M.D. Fla. Mar. 31, 2017) (ADA and FCRA disability discrimination).

### *Prima Facie Case*

Although Plaintiff has brought several different claims, the requirements for a prima facie case for all of them are similar. A prima facie case of retaliation under the workers' compensation law requires that Plaintiff demonstrate (1) he sought workers' compensation benefits, (2) he suffered an adverse employment action, and (3) there is a causal connection between his workers' compensation

claim and the adverse action. *See, e.g., Williams v. Record Town, Inc.*, No. 8:08-cv-502-T-24-MAP, 2009 WL 960096, at * 3 (M.D. Fla. Apr. 6, 2009). A prima facie case of retaliation under the FCRA or the ADA requires that the employee demonstrate (1) that he engaged in statutorily protected conduct, (2) that he suffered an adverse employment action, and (3) that a causal connection exists between the two. *Batson*, 897 F.3d at 1328-29; *Monroe v. Florida Dep't of Corr.*, 793 F. App'x 924, 928 (11th Cir. 2019). A prima facie case of discrimination under the ADA or the FCRA requires that the plaintiff show: (1) that he has a disability; (2) that he is a "qualified individual" such that he could perform the essential functions of his position with or without accommodation; and (3) that he was discriminated against because of his disability. *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019). Where, as here, the plaintiff alleges disparate treatment because of a disability, the plaintiff must prove he or she was treated differently from similarly situated, non-disabled employees. *See Toliver*, 2017 WL 1196637, at *5.

Defendant argues that Plaintiff has failed to present a prima facie case for purposes of his ADA and FCRA discrimination claims because he cannot establish he was disabled or regarded as disabled, or that he was a qualified individual. Defendant argues that Plaintiff's ADA and FCRA retaliation claims fail because he cannot establish he engaged in protected activity. Defendant does not appear to challenge Plaintiff's showing of a prima facie case for purposes of workers' compensation retaliation, but argues as to this claim, and as to the others, that it

has proffered legitimate reasons for its actions that Plaintiff has not shown to be
pretextual.

The Court assumes for purposes of this Order that Plaintiff has presented
evidence to establish a prima facie case under the theories asserted.  The question
becomes whether Defendant has offered legitimate non-discriminatory and non-
retaliatory reasons for its conduct, and if so, whether Plaintiff has shown them to be
pretextual.

***Legitimate Reason Versus Pretext***

The defendant's burden to provide a legitimate reason for its actions is "a low
bar to hurdle." *Flowers v. Troup Cty, Ga., Sch. Dist.,* 803 F.3d 1327, 1336 (11th Cir.
2015).  The defendant "need not persuade the court that its proffered reasons are
legitimate; the defendant's burden is merely one of production, not proof." *Vargas v.
Michaels Stores, Inc.*, No. 8:16-cv-1949-T-33JSS, 2017 WL 2931379, at *14 (M.D.
Fla. July 10, 2017) (quoting *Weston-Brown v. Bank of Am. Corp.*, 167 F. App'x 76, 80
(11th Cir. 2006)).

If the defendant meets that burden, then the plaintiff must present evidence
that the proffered reasons are pretextual, that is, that the reasons offered were not
the true reasons.  *Burgos-Stefanelli v. Sec'y, U.S. Dept. of Homeland Sec.*, 410 F
App'x 243, 247 (11th Cir. 2011).  A reason is pretextual only if it is false and the
true reason for the decision was discrimination or retaliation.  *Gogel v. Kia Motors*

*Mfg. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (en banc); *Burgos-Stefanelli*, 410 F. App'x at 247.

Evidence of pretext must be sufficient to "allow a reasonable finder of fact to conclude that the [employer's] articulated reasons were not believable." *Callahan v. City of Jacksonville, Fla.*, 805 F. App'x 749, 753 (11th Cir. 2020) (quoting *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006)). The plaintiff must "demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [defendant's] proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275 (11th Cir. 2008) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)). As long as the proffered reasons might motivate a reasonable employer, the employee must rebut each one. *Chapman v. AI Transp.*, 229 F.3d 1012, 1024-25, 1029-1030 (11th Cir. 2000); *Burgos-Stefanelli*, 410 F. App'x at 247.

A plaintiff cannot succeed by quarreling with the wisdom of the employer's decision or by showing the decision was based on erroneous facts. *Id.*; *Thatcher v. Dep't of Veterans Affairs*, No. 8:17-cv-3062-T-AEP, 2020 WL 2838849 (M.D. Fla. June 1, 2020). Nor may an employee "recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." *Chapman*, 229 F.3d at 1030. The court is not a "super-personnel

department that reexamines an entity's business decisions." *Id.* (quoting *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991)).

The employer may be high-handed or mistaken, and may terminate an employee for a good reason or a bad reason, as long as the reason is non-discriminatory and non-retaliatory. *See Chapman*, 229 F.3d at 1030. "[T]he question is not whether the employee actually engaged in the conduct, but instead whether the employer in good faith believed that the employee had done so." *Gogel*, 967 F.3d at 1148. As the *en banc* Eleventh Circuit emphasized in *Gogel*:

> [t]he inquiry ... centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head. ... *The question is whether [the] employers were dissatisfied with [the employee] for these or other non-discriminatory reasons, even if mistakenly or unfairly so*, or instead merely used those [reasons] as cover for discriminating against her. ... [emphasis added]

*Id.* at 1148 (quoting *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F. 3d 1253, 1266 (11th Cir. 2010)); *Cusick v. Yellowbook, Inc.*, 607 F. App'x at 955 ("The inquiry into pretext is concerned with the employer's beliefs, not the employee's perceptions of his performance.").

Defendant has offered legitimate non-discriminatory and non-retaliatory reasons for Plaintiff's discipline and termination, identifying numerous specific incidents and problems with Plaintiff's performance as Battalion Chief in 2019. Chief Davidson supported his recommendation that Plaintiff be terminated by citing the following issues, among others:  multiple instances of improper use of a department purchasing card for supplies without using a tax exemption as required

by department policy, failure to turn in an assignment in time for Davidson to use at a meeting, failure to send part of another assignment until reminded to do so by Davidson, turning in a report that was due in October on November 1, 2019, failing to attend a training class as directed, failing to prepare a draft purchasing procedure as directed, and coming to a meeting without a list of specific job responsibilities as directed.

Plaintiff was placed on a performance improvement plan or PIP on November 25, 2019.  The PIP required Plaintiff to demonstrate progress on various issues and projects within 90 days and to provide interim status reports.  The PIP advised that failure to comply with the PIP's goals could result in discipline, including termination.  On February 3, 2020, Plaintiff reported to Chief Davidson that he was working on the various items for the PIP.  He specifically represented in an email that he was "continuing to work[] on [his] presentation" for one of the projects and that he was "presently putting a power point together which will be incorporated into the presentation."

In mid-February 2020, Chief Davidson directed Plaintiff to cover another Battalion Chief's shift the next day.  Because this might involve going out on fire calls, Plaintiff became extremely anxious and had to go to the emergency room with high blood pressure, followed by a two-week leave from work to recuperate. Plaintiff returned to work and met with Chief Davidson on February 26, 2020, to discuss his progress on the PIP over the past 90 days.  Plaintiff testified that he

reported on the work he had done on the various goals and projects; it is disputed whether he had any written work product to present at the meeting.

Plaintiff admits, however, that despite his specific representation in early February that he was "presently" working on a PowerPoint, as of the time of the meeting three weeks later, he still had not done "any" of the PowerPoint. Plaintiff testified that as soon as Chief Davidson heard this, he started raising his voice and "kept asking me about a PowerPoint."

Plaintiff does not dispute that these and other instances of arguably deficient performance occurred in some fashion. Some of them he does not specifically recall. For some of them, he points to extenuating circumstances such as other job demands or being out on medical leave. For others, he blames Davidson for communication problems or downplays the significance of the issues. He accuses Davidson of lying about specific aspects of several incidents, but he points to no evidence of deliberate falsehood as opposed to differences in memory and perception.

In short, Defendant has pointed to legitimate reasons that would motivate a reasonable employer to take the actions it did, and Plaintiff has not shown that the reasons were pretextual under the standards set forth above. Defendant may have been high-handed, unfair, or wrong, but Plaintiff has pointed to no evidence that its stated reasons were not the real reasons. Accordingly, Defendant's motion for summary judgment is granted.

It is therefore

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Defendant Haines City, Florida's Motion for Final Summary

Judgement and Incorporated Statement of Facts and Memorandum of

Law" (Doc. 21) is **GRANTED**.

(2) The Clerk is directed to enter judgment in favor of Defendant Haines

City, Florida, and against Plaintiff William Valencia.

(3) Following the entry of judgment, the Clerk is directed to terminate any

pending motions and deadlines and thereafter close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 14th day of

February, 2023.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**